1  LAW OFFICES OF CHRISTIAN J. GARRIS
   CHRISTIAN J. GARRIS  SBN 175808
2  633 West Fifth Street, 28th Floor
   Los Angeles, California 90017
3  Telephone: (213) 624-2900
   Facsimile: (213) 624-2901
4  Email: cjg@christiangarris.com

5  Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE WILLIBY, an individual, | Case No. 2:14-cv-4203 |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **BREACH OF PLAN (RECOVERY OF PLAN BENEFITS)** |
| AETNA LIFE INSURANCE COMPANY and DOES 1-10, inclusive, | |
| Defendants. | |

1.  Plaintiff YVETTE WILLIBY ("Plaintiff") complains and alleges:

## INTRODUCTORY ALLEGATIONS

2.  This Court's jurisdiction is invoked pursuant to 29 U.S.C. § 1132(e). Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Alternatively, Plaintiff's claims arise in part under ERISA and in part under state law claims falling within the pendent or supplemental jurisdiction of this Court, deriving from a common nucleus of operative facts.

3.  Venue is properly within the Central District of California pursuant to

29 U.S.C. § 1132(e)(2), because the acts complained of have occurred within this District, because Defendant resides in or may be found within this district, and because the ends of justice so require.

4. This action seeks damages for the denial of disability benefits under a group disability policy ("the Plan") established by Plaintiff's employer, The Boeing Company ("Boeing"), and funded and administered by Defendant Aetna Life Insurance Company ("Aetna").

5. Plaintiff seeks benefits, attorneys' fees and costs, and other appropriate relief for the improper, erroneous and illegal denial of disability benefits owed to Plaintiff, a participant and beneficiary of the Plan.

## THE PARTIES AND THEIR RELATIONSHIPS

6. Plaintiff at all times herein mentioned was a resident and citizen of the County of Los Angeles, State of California. At all relevant times, Plaintiff was a participant and beneficiary of the Plan.

7. At all relevant times, the Plan was a group benefit plan that provided Plaintiff with protection against the risk of disability. Plaintiff was an employee of Boeing and was enrolled at all relevant times in the Plan.

8. The Plan that is the subject of this action is and was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) sponsored by and established by Boeing for the purpose of providing peace of mind and security to its participants in the event that, among other things, a participant or beneficiary of the Plan should suffer disability.

9. Aetna is an insurance company authorized and licensed to conduct, and is indeed conducting, the business of insurance in the State of California. Plaintiff is informed and believes, and thereon alleges, that Aetna is a corporation domiciled in State of Connecticut, with its principal place of business in the State of California, County of Los Angeles.

## FACTUAL BACKGROUND

10. The disability Plan established by Boeing was funded and administered by Aetna, Plan Number 0728777.

11. Plaintiff paid all premiums due for the disability coverage under the Plan.

12. Plaintiff worked as a Supply Chain Specialist 3 / Integrated Support Planning and Management CGL. Her job requires a great deal of mental acuity.

13. On or about September 8, 2011, Plaintiff had a stroke.

14. The onset date of Plaintiff's claim for disability benefits is approximately November 2012.

15. Plaintiff's claim for disability benefits was approved by California's Employment Development Department.

16. On October 24, 2012, Stuart Winkler, M.D., wrote, "One year ago she was in the hospital with a stroke diagnosed on an MRI scan and CT scan. This was characterized by confusion and difficulty talking. Her neurologist is Dr. David Edelman. Over the last 4-5 months she has become weaker and weaker and her appetite has diminished. She has lost some weight. She has severe osteoarthritis and the pain has worsened."

17. On or about December 12, 2012, Plaintiff saw David Edelman, M.D., who noted that Plaintiff was unable to pay attention and had lost her short-term memory.

18. On or about December 21, 2012, Plaintiff underwent an MRI that showed "temporoparietal infarct and chronic microangiopathic changes in the white matter."

19. On or about January 24, 2013, Dr. Edelman wrote that Plaintiff was suffering from a cognitive impairment.

20. On or about February 28, 2013, Aetna denied further payment of

short-term disability benefits.

21. On or about March 4, 2013, Aetna's Vaughn Cohan, M.D., spoke with Dr. Edelman who noted that "Dr. Edelman indicated that he did not believe the claimant would be capable of performing her own occupational responsibilities."

22. On or about June 10, 2013, Bernard Ullman, M.D., wrote that the stroke has caused Plaintiff to suffer from debilitating in residual migraines.

23. On or about August 12, 2013, Dr. Ullman wrote that Plaintiff was having "a lot of difficulty with concentration and switching tasks." Dr. Ullman determined that Plaintiff was disabled.

24. On or about August 23, 2013, Robert Hosseini, M.D., listed the nine medications that Plaintiff was currently taking. He diagnosed her with migraine headaches, fibromyalgia, and other conditions. Also on or about August 23, 2013, Sheherbano Mehdi, M.D., stated that Plaintiff was suffering the effects of a stroke that had left her cognitively impaired.

25. On or about August 27, 2013, Dr. Edelman certified Plaintiff as disabled from her occupation due to headaches and memory loss. Dr. Edelman diagnosed Plaintiff with migraine headaches, acute cardiovascular disease and dementia.

26. On or about September 10, 2103, Dr. Edelman wrote: "She presented with severe headaches and her initial diagnosis was migraine type headaches. However, MRI scan of the brain showed evidence of stroke, and subsequent testing showed evidence of an autoimmune type disorder. Her initial diagnosis was based upon her clinical presentation and subsequent diagnoses were based on her MRI scan and other testing. She has also been seen by Dr. Wen and by Dr. Ullman. They've also [] confirmed her cognitive impairments. Based upon her cognitive impairments alone, she is disabled.

27. On or about September 20, 2013, Dr. Mehdi stated that Plaintiff could barely walk and required knee surgery.

28. On or about October 8, 2013, Carol Lindberg, M.D., wrote that Plaintiff remained under her care as a result of the stroke.

29. On or about October 22, 2013, Dr. Edelman certified Plaintiff's disability.

30. On or about November 1, 2013, Dr. Ullman wrote, "The stroke involved the right hemisphere. She also has extensive small vessel ischemic disease of the brain."

31. On or about December 2, 2013, Dr. Mehdi diagnosed Plaintiff with "fibromyalgia/antiphospholipid antibody syndrome."

32. On or about December 10, 2013, Deborah Budding, Ph.D., also certified Plaintiff as disabled due to her cognitive defects.

33. On or about December 12, 2013, Dr. Lindberg wrote: "Yvette Williby has been under my care for the treatment of grief and depression secondary to the right parieto-temporal stroke she suffered in September 20[]11. She demonstrates significant cognitive slowing and problems with concentration, word-finding, and memory. She reports a significant decline in her ADL's and quality of life secondary to this stroke. I do not believe that grief and depression account for the full extent of her impairment and I have referred her for comprehensive neuro-psychological testing to define the complete extent of her cognitive deficits. Because of her significant cognitive slowing and impairment in concentration, memory, and *word-finding, it is my professional opinion that she is disabled from any gainful occupation for which she is reasonably suited."

34. Aetna has never had Plaintiff evaluated by any of its physicians. Every doctor who has ever seen Plaintiff has concluded that she is unable to work and totally disabled from her occupation and any occupation for which she is reasonably suited in light of her education, training, and experience.

35. Plaintiff's condition is permanent and stationary.

36. The Plan required payment of benefits within the jurisdiction of the

1 above-entitled Court for a total amount to be shown at the time of trial.

2    37. The Plan was entered into within the jurisdiction of the above-entitled Court.

4    38. The Plan calls for performance within the jurisdiction of the above-entitled Court.

6    39. Plaintiff has pursued and exhausted all administrative appeals, which the Plan and Defendant denied.

## FIRST CAUSE OF ACTION
## FOR BREACH OF PLAN AND RECOVERY OF PLAN BENEFITS
### (Against All Defendants)

40. The allegations contained in all previous paragraphs are incorporated herein by reference as though set forth in full.

41. The disability Plan established by Boeing was funded and administered by Aetna, Plan Number 0728777.

42. Plaintiff paid all premiums due for the disability coverage under the Plan.

43. Plaintiff worked as a Supply Chain Specialist 3 / Integrated Support Planning and Management CGL. Her job requires a great deal of mental acuity.

44. On or about September 8, 2011, Plaintiff had a stroke.

45. The onset date of Plaintiff's claim for disability benefits is approximately November 2012.

46. Plaintiff's claim for disability benefits was approved by California's Employment Development Department.

47. On October 24, 2012, Stuart Winkler, M.D., wrote, "One year ago she was in the hospital with a stroke diagnosed on an MRI scan and CT scan. This was characterized by confusion and difficulty talking. Her neurologist is Dr. David Edelman. Over the last 4-5 months she has become weaker and weaker

and her appetite has diminished. She has lost some weight. She has severe osteoarthritis and the pain has worsened."

48. On or about December 12, 2012, Plaintiff saw David Edelman, M.D., who noted that Plaintiff was unable to pay attention and had lost her short-term memory.

49. On or about December 21, 2012, Plaintiff underwent an MRI that showed "temporoparietal infarct and chronic microangiopathic changes in the white matter."

50. On or about January 24, 2013, Dr. Edelman wrote that Plaintiff was suffering from a cognitive impairment.

51. On or about February 28, 2013, Aetna denied further payment of short-term disability benefits.

52. On or about March 4, 2013, Aetna's Vaughn Cohan, M.D., spoke with Dr. Edelman who noted that "Dr. Edelman indicated that he did not believe the claimant would be capable of performing her own occupational responsibilities."

53. On or about June 10, 2013, Bernard Ullman, M.D., wrote that the stroke has caused Plaintiff to suffer from debilitating in residual migraines.

54. On or about August 12, 2013, Dr. Ullman wrote that Plaintiff was having "a lot of difficulty with concentration and switching tasks." Dr. Ullman determined that Plaintiff was disabled.

55. On or about August 23, 2013, Robert Hosseini, M.D., listed the nine medications that Plaintiff was currently taking. He diagnosed her with migraine headaches, fibromyalgia, and other conditions. Also on or about August 23, 2013, Sheherbano Mehdi, M.D., stated that Plaintiff was suffering the effects of a stroke that had left her cognitively impaired.

56. On or about August 27, 2013, Dr. Edelman certified Plaintiff as disabled from her occupation due to headaches and memory loss. Dr. Edelman diagnosed Plaintiff with migraine headaches, acute cardiovascular disease and

dementia.

57. On or about September 10, 2103, Dr. Edelman wrote: "She presented with severe headaches and her initial diagnosis was migraine type headaches. However, MRI scan of the brain showed evidence of stroke, and subsequent testing showed evidence of an autoimmune type disorder. Her initial diagnosis was based upon her clinical presentation and subsequent diagnoses were based on her MRI scan and other testing. She has also been seen by Dr. Wen and by Dr. Ullman. They've also [] confirmed her cognitive impairments. Based upon her cognitive impairments alone, she is disabled.

58. On or about September 20, 2013, Dr. Mehdi stated that Plaintiff could barely walk and required knee surgery.

59. On or about October 8, 2013, Carol Lindberg, M.D., wrote that Plaintiff remained under her care as a result of the stroke.

60. On or about October 22, 2013, Dr. Edelman certified Plaintiff's disability.

61. On or about November 1, 2013, Dr. Ullman wrote, "The stroke involved the right hemisphere. She also has extensive small vessel ischemic disease of the brain."

62. On or about December 2, 2013, Dr. Mehdi diagnosed Plaintiff with "fibromyalgia/antiphospholipid antibody syndrome."

63. On or about December 10, 2013, Deborah Budding, Ph.D., also certified Plaintiff as disabled due to her cognitive defects.

64. On or about December 12, 2013, Dr. Lindberg wrote: "Yvette Williby has been under my care for the treatment of grief and depression secondary to the right parieto-temporal stroke she suffered in September 20[]11. She demonstrates significant cognitive slowing and problems with concentration, word-finding, and memory. She reports a significant decline in her ADL's and quality of life secondary to this stroke. I do not believe that grief and depression account for the

full extent of her impairment and I have referred her for comprehensive neuro-psychological testing to define the complete extent of her cognitive deficits. Because of her significant cognitive slowing and impairment in concentration, memory, and *word-finding, it is my professional opinion that she is disabled from any gainful occupation for which she is reasonably suited."

65. Aetna has never had Plaintiff evaluated by any of its physicians. Every doctor who has ever seen Plaintiff has concluded that she is unable to work and totally disabled from her occupation and any occupation for which she is reasonably suited in light of her education, training, and experience.

66. Plaintiff's condition is permanent and stationary.

67. The Plan required payment of benefits within the jurisdiction of the above-entitled Court for a total amount to be shown at the time of trial.

68. The Plan was entered into within the jurisdiction of the above-entitled Court.

69. The Plan calls for performance within the jurisdiction of the above-entitled Court.

70. Plaintiff has pursued and exhausted all administrative appeals, which the Plan and Defendant denied.

71. As a direct and proximate result of Defendant's refusal to honor the terms of the Plan, Plaintiff has suffered contractual damages under the and other incidental damages and out-of-pocket expenses, including attorney fees and costs, all in a sum to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For benefits payable under the Plan to reimburse Plaintiff, a beneficiary and participant of the Plan, less amounts previously paid, plus interest;

2. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. §

1132(g)(1);

    3.    For pre-judgment interest at the appropriate rate; and

    4.    For such other relief as the court deems appropriate.

Dated: May 30, 2014        LAW OFFICES OF CHRISTIAN J. GARRIS

By:_____
    Christian J. Garris, Esq.

Attorneys for Plaintiff

— 10 —
**Complaint**